[Civ. No. 8905. Third Dist. Dec. 14, 1956.]

J. H. TRISDALE, INC. (a Corporation), Appellant, v. SHASTA COUNTY TITLE COMPANY (a Corporation) et al., Respondents.

Ira M. Shadwell for Appellant.

Chenoweth & Leininger and Royal E. Handlos for Respondents.

SCHOTTKY, J.—Appellant commenced an action to recover damages alleged to have been suffered by it as the result of a misdescription of an easement of record made by respondents in a preliminary title report and in a policy of title insurance.

At the time that appellant purchased the property, the easement in question was of record in the Shasta County Recorder's office, in Book 217 of Official Records, at page 105. It was an easement belonging to Pacific Gas and Electric Company, a corporation, for the construction of an electric transmission line. Neither the preliminary title report nor the policy of title insurance made reference to such an easement. Instead, both documents, in identical language, referred to an easement recorded in Book 217 of Official Records, at page 105, belonging to Pacific Telephone and Telegraph Company, a corporation.

The first cause of action is based upon the theory of breach of the terms of the title insurance policy in that the policy failed to show or refer to an easement of record belonging to Pacific Gas and Electric Company for the construction of an electric transmission line. The insurer named in the policy

is Title Insurance and Guaranty Company. In addition to the insurer, respondent Shasta County Title Company was also named as a defendant to the first cause of action based upon the following statement appearing on the title page of the policy: "This policy issued direct from the office of Shasta County Title Company, Redding, California, affiliated with Title Insurance and Guaranty Company." Respondents maintain that the policy was only issued by the insurance company and not by the title company.

The second cause of action is based upon the theory that respondent title company was negligent in searching the record and in preparing the preliminary title report for the benefit and use of appellant. It alleges in detail that appellant purchased its property, and suffered the resulting damage, in reliance upon the report that had been ordered by its agent for its benefit and use, and that appellant was reasonably entitled to rely upon the state of the title revealed by the report. It alleges further that plaintiff knew of the existence and location of lines and poles of the Pacific Telephone and Telegraph Company and reasonably believed that the deed of easement mentioned concerned such poles and lines and that plaintiff had no duty to examine, and in particular, Book 217 of Official Records, at page 105, in order to ascertain whether the deed of easement was correctly described.

The court sustained the demurrers of both respondents without leave to amend, upon the ground that the first amended complaint did not state a cause of action against either respondent, stating in its ruling that it would consider a motion for leave to amend if made within 10 days. No such motion was made and judgment was entered in favor of respondents. In ruling upon the demurrer the court stated that the sole basis for its ruling was that appellant was contributorily negligent in failing to examine the record itself, after being given notice of the existence of an easement upon its property. The court said: "The typographical error was carelessness but the refusal or neglect of the plaintiff to avail himself of the knowledge to be obtained from the public records was even more careless." This appeal is from the judgment.

Appellant contends first that it was error to sustain the demurrers because the allegations of the complaint, if denied, would have raised an issue of fact for determination by the trier of fact as to whether appellant under such circum-

stances had a right to rely upon the statement in the preliminary title report that the easement recorded in Book 217 of Official Records, at page 105, belonged to Pacific Telephone and Telegraph Company.

Appellant next contends that the first cause of action states a good and sufficient cause of action for damages resulting from a breach of the title insurance policy issued to appellant by respondents in that the policy did not "show" or "refer" to an easement belonging to the Pacific Gas and Electric Company for the construction of an electric transmission line. Appellant maintains that at the very least, this issue is one of fact and not of law, and it was error for the court to impliedly find as a matter of law that there was no breach of the terms of the policy. The policy only "shows" and "refers" to a nonexistent deed of easement belonging to the Pacific Telephone and Telegraph Company.

Appellant concedes that if the policy had merely referred to a deed of easement recorded at Book 217 of Official Records, at page 105, without undertaking to name the owner of the easement, there would have been no breach of the policy. However, appellant argues, when respondents went further and voluntarily undertook to name the owner of the easement, they took upon themselves the risk and the obligation of naming the owner accurately. ■ The terms of the policy are clear and unambiguous. They insure plaintiff against any encumbrance not shown or referred to in the policy. A reference to an encumbrance belonging to "A" is not a reference to an encumbrance belonging to "B."

■ As was stated in the case of *Overholtzer* v. *Northern Counties Title Ins. Co.*, 116 Cal.App.2d 113, at page 122 [253 P.2d 116] :

"Title insurance policies should be interpreted in the same fashion as are other insurance policies, that is, liberally in favor of the insured, and against the insurer. Title insurance is practically an unregulated business. No state control is exercised over the terms of the policies or over rates. The companies frame the policies. When the very contingency happens that was insured against, only clear and compelling reasons should permit a court to deny to the insured full reimbursement for all losses, up to the face amount of the policy, sustained because of the happening of such contingency. [Citations.]"

The Overholtzer case, *supra,* was also an action for damages for breach of a title insurance policy resulting from the

failure of the policy to disclose the existence of a recorded easement for a pipeline. The owners discovered the existence of the easement some time after they had purchased the property and the policy had been issued. As a result, they had to engage in litigation with the holder of the easement. They brought suit on the policy and recovered damages. Both sides appealed, plaintiffs appealing because of inadequate damages. The judgment was affirmed as to defendant's liability on the policy, and was reversed as to the damages, with directions to retry that issue. On the sufficiency of pleading damages, the court stated, at page 124:

". . . The damage resulted from the cloud on the title. If that cloud impairs the market value of the land, the Overholtzers are entitled to whatever damages resulted from that cloud. . . . So far as pleading and proof are concerned, an allegation and proof of the existence of the easement and of diminution in the market value are all that is required."

It would appear that the court sustained the demurrers to both causes of action upon the stated ground that the plaintiff was itself negligent in failing to inspect the record after being given notice of a certain easement being recorded in Book 217 of Official Records, at page 105. This ground was apparently intended to be equally applicable to the cause of action based upon the title insurance policy. The court's ruling appears to be, not that there has not been a breach of the policy, but that the insured is barred as a matter of law by its own contributory negligence. We think that the court erred in so ruling.

For as stated in *King* v. *Stanley*, 32 Cal.2d 584, at page 590 [197 P.2d 321]:

". . . Title insurance is a contract to indemnify against loss through defects in the title or against liens or encumbrances that may affect the title at the time when the policy is issued. [Citations.]"

The principal question in the cause of action based upon the policy is whether there was a breach of the policy, or, in other words, a breach of the contract of indemnity against loss. No California decision can be found that suggests that the negligence of the insured could be set forth as a bar to such an action, particularly as a matter of law as has been done by the trial court in this action. The New York decision of *Maggio* v. *Abstract Title & Mortg. Corp.*, 277 App.Div. 940 [98 N.Y.S.2d 1011], indicates that the doctrine of negligence has no application to a contract of title insurance. At page 1013 [98 N.Y.S.2d] the court stated:

". . . In the case of a title insurance policy, the insurer undertakes to indemnify the insured if the title turns out to be defective. That is the purpose of procuring the insurance and knowledge of defects in the title by the insured in no way lessens the liability of the insurer. The doctrine of skill or negligence has no application to a contract of title insurance.''

The appellant next contends that the allegation in the second cause of action was sufficient to raise an issue of fact as to whether, under such circumstances, a reasonable person was entitled to rely upon such a statement of ownership of an easement of record in a preliminary title report without the necessity of having to examine the record for himself in order to ascertain its accuracy.

Appellant concedes that this contention assumes that appellant was willing to assume the risk as to the extent of an easement belonging to Pacific Telephone and Telegraph Company, but that it was not willing to, and did not mean to, assume the risk as to the extent of an easement belonging to an entirely different corporation for an entirely different purpose.

As was stated by the trial court itself, in its memorandum opinion: ''As I have stated before it is a matter of common knowledge that there is considerable difference in the rights and extent of those rights pertaining to an easement for a telephone line of low voltage and a power line of high voltage, and one might very well be perfectly willing to accept the easement of a telephone company and not to accept an easement of a power company.''

It is generally accepted that an abstracter's obligation in preparing an abstract of title, such as the preliminary title report here in question, is contractual, and that liability will result, on the theory of breach of contract, for damages resulting from negligence in the preparation of the title report.

A statement that is particularly applicable is found in 1 American Jurisprudence, Abstracts of Title, section 15, that: ''So far as he [abstracter] assumes to describe instruments of record, due care and skill require that such description shall be accurate.''

In 1 American Jurisprudence, Abstracts of Title, section 26, at page 170, it is stated:

". . . The person employing the abstracter has the right to rely upon the truth and accuracy of the abstract as regards essential facts of record, unless it is plainly apparent from the certificate that there was a mistake. He does not, by so

relying upon the work of the abstracter, defeat recovery for negligence.''

Also, in 1 Corpus Juris Secundum, Abstracts of Title, section 11, page 391, it is stated:

''One who employs an abstracter to abstract or report upon a title is justified in relying upon the truth and accuracy of the abstract or report, as regards essential facts of record, without himself making an investigation thereof, unless the abstract itself or the terms of the certificate make it plainly apparent that there has been an omission or mistake. So, while it may be the duty of one relying on an abstract which recites that a deed is subject to certain restrictions, without setting them out, to examine the record and see what restrictions were contained in the deed, where the abstract purports to recite the restrictions of a deed, but gives only a part of them, with nothing to show that any are omitted, the customer may rely on the abstract as setting forth all and the only restrictions contained in the deed, and if there are others which are material, the abstracter is liable for his failure to show them.''

Respondents argue that the date, book and page being correct, and no terms of the easement being set forth either in the title report, or title policy, the appellant had no other recourse than to look at the public record referred to, or inquire from the Telephone Company as to its rights, and in either case the true facts would have been disclosed.

However, as appellant points out, there is nothing in the report to indicate that such a statement as to ownership of the easement was inaccurate. The language in the exception, ''for poles, towers and incidental purposes,'' would not of itself indicate to a layman that the statement of ownership was inaccurate. At most, it would be a question of fact as to whether such was the case.

Respondents cite section 19 of the Civil Code, which states:

''Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.''

However, the rule stated in this section tends to support appellant's contention that it was a question of fact as to whether the preliminary title report gave appellant ''actual notice'' of circumstances sufficient to put a ''prudent man'' upon inquiry as to whether the easement referred to in the

report belonged to Pacific Telephone and Telegraph Company or to someone else.

Respondents' argument as to the doctrine of constructive notice of matters of record cannot be applied to an action against a title company for negligence in reporting the state of the title to real property. If the doctrine of constructive notice applied to such cases, then title companies would never be held liable for their negligence, no matter how flagrant it might be, and there would be little use for prospective property owners to obtain title reports, for they would be relying upon any statements contained therein at their own risk.

Respondents' final contention that the instant action is barred by the two year statute of limitations (Code Civ. Proc., § 339, subd. 1) by reason of the doctrine of constructive notice is without merit. This action was commenced by the filing of the original complaint on April 23, 1954. The first cause of action alleges that plaintiff did not discover the nature or extent of the damage suffered by it as the result of the breach of the terms of the policy until January 7, 1954. The second cause of action alleges that plaintiff did not learn of the existence of the right-of-way for an electric transmission, and of the negligence of defendant title company, until on or about October 20, 1953. It would therefore appear that both causes of action show affirmatively on the face thereof that they were commenced within the allowable statutory period.

As we view the matter it would be strange, indeed, if prospective purchasers of real property could not rely upon title reports for which they are required to pay, but must search the records themselves. If such be the law a large part of the value of title companies would disappear. For as aptly stated in *Bridgeport Airport, Inc.* v. *Title Guaranty & Trust Co.*, 111 Conn. 537 [150 A. 509, 71 A.L.R. 345], at page 348 [71 A.L.R.] :

"The defendant, having assumed to search and report upon the title, the very purpose of obtaining its services would be undone if the plaintiff could not rely upon the truth and accuracy of its report as regards essential facts of record, unless perhaps the terms of the certificate made it plainly apparent that there was a mistake."

In view of the foregoing we conclude that the court erred in sustaining the demurrers. The judgment is reversed with directions to the trial court to overrule the demurrers.

Van Dyke, P. J., and Peek, J., concurred.