[No. 38014.    Department Two.    June 9, 1966.]

JOHN G. AMES *et al., Respondents,* v. BRIAN RICHARD BAKER, *Appellant.**

*Reported in 415 P.2d 74.

*Gavin, Robinson, Kendrick, Redman & Mays* and *John Gavin,* for appellant.

*Halverson, Applegate, McDonald & Weeks* and *Thomas B. Grahn,* for respondents.

WEAVER, J.—". . . the Insurer agrees to reimburse the Insured . . . for such reasonable out-of-pocket expenses incurred ·. . . arising out of an *attack of* . . . *Encephalitis* . . . and *which first manifests itself during the period of this insurance* commencing at noon August 25, 1958 . . . ." (Italics ours).

The above provision of a "dread disease" insurance policy forms the crux of this action brought by an insured against the designated representative of the Underwriters at Lloyd's, London. The issue posed is whether the clause "which first manifests itself" refers to "encephalitis" or to "attack."

Prior to August 25, 1952, John Ames purchased a health insurance policy from Lloyd's. According to the language of the policy, the insurer promised to pay certain expenses that members of the Ames' household should incur by reason "of an attack of . . . encephalitis . . . which first manifests itself during the two-year period of this insurance." The period of insurance began August 25, 1952 and extended to August 25, 1954. During the late fall or early winter of 1952, at a time when the policy was in force and effect, Mr. Ames' daughter (hereinafter referred to as the insured) developed a severe case of encephalitis (sleeping sickness). The insurer conceded liability and paid several thousand dollars of the insured's medical expenses.

By the spring of 1953, the insured appeared to have completely recovered from encephalitis.

In April, 1954, at a time when the policy was still in force, the insured suffered a second attack of encephalitis. Sometime prior to the expiration date of the policy (August 25, 1954), Ames purchased another health insurance policy from the insurer. This policy was similar to the first; it covered enumerated dread diseases which first manifest themselves during the period of insurance (August 25, 1954

to August 25, 1956), but was dissimilar in that it did *not* provide coverage for attacks of encephalitis.

By the fall of 1956, the insured appeared to have completely recovered from the second attack although her strength was slow in returning and for the next couple of years she had to "take it easy."

Sometime prior to the August 25, 1956 expiration date of the second policy, Ames purchased from the insurer a renewal certificate which, in effect, renewed the second policy's coverage and extended it through August 25, 1958.

From fall 1956 until August, 1958, the insured gradually regained her strength. Prior to the expiration date of the renewal coverage, and at a time when the insured appeared to have completely recovered her health (although admittedly, not her full strength), Ames purchased from the insurer the health insurance policy sued upon in the instant action. This policy was, in all material aspects, identical to the first policy: it contained language promising that the insurer would pay expenses incurred by reason of "an attack of . . . encephalitis, . . . which first manifests itself during the period of this insurance . . ." (August 25, 1958 through August 25, 1961).

Sometime during the month of May, 1960, at a time when the last-issued policy was still in force, the insured suffered her third attack of encephalitis.

The insurer refuses to recognize liability under the last-issued policy on the ground that the disease did not first manifest itself during the period between 1958 and 1961. It is the position of the insurer that the insured was first "attacked" by encephalitis in 1952 at the time when the encephalitis germs first entered and infected her system.

The insured, on the other hand, contends that she was "attacked" by encephalitis on three different occasions with the third attack first manifesting itself in 1960, during the period covered by the last-issued policy.

The trial judge rejected defendant's theory and held that coverage could be afforded if an *attack* first manifested itself during the term of the policy and that the 1960 illness was such an attack. We agree with the trial judge.

█ It is well established that the language of an insurance policy should be interpreted in accordance with the way it would be understood by the average man purchasing insurance. *Zinn v. Equitable Life Ins. Co.*, 6 Wn.2d 379, 107 P.2d 921 (1940). Nice distinctions and refinements are not favored. Rather than interpreting the policy in a technical sense, the court should interpret the policy in accordance with its ordinary meaning. *Thompson v. Ezzell*, 61 Wn.2d 685, 379 P.2d 983 (1963), and authorities cited. Words used in a policy of insurance should be given their common, ordinary meaning, rather than that of the lexicographers or of those skilled in the niceties of language. 13 Appleman, Insurance Law and Practice § 7384 (1943). We agree with the trial court that the average person in plaintiff's position would interpret the policy to mean that since the insurer, with full knowledge of the insured's medical background, reinstated the term "encephalitis" into the policy, if the insured again became ill with encephalitis between 1958 and 1961, she would be insured.

█ Defendant (appellant) admits that if the policy is found reasonably capable of two interpretations, the doubts must be resolved in favor of plaintiff. It is defendant's position that there is no ambiguity in the instant policy since modifying clauses generally modify the nearer, rather than the more remote, antecedent, relying on *Davis v. Gibbs*, 39 Wn.2d 481, 236 P.2d 545 (1951). Accordingly, defendant contends that the clause "which first manifests itself" clearly refers to "encephalitis" rather than to "attack."

We do not believe the "last antecedent" guide to contractual interpretation dispositive of this case. It is but one of a series of interpretative guides and cannot be said ipso facto to be controlling. It cannot be used to frustrate the intention of the parties. *Davis v. Gibbs, supra.*

Defendant contends that the policy is to be construed so that it affords coverage only if the first manifestation of encephalitis occurred between 1958 and 1961. Such a construction defies logic for it was impossible for the disease to first manifest itself between 1958 and 1961 when it in

fact first manifested itself in 1952, as the defendant well knew.

██ Insurance contracts must be interpreted according to the evident intent of the parties. The interpretation desired by defendant would contradict the general purpose of the policy. What then did the parties intend when they reinserted coverage for "encephalitis" at a time when the insurer (with full knowledge of plaintiff's medical background) admits that "the insured appeared to have completely recovered her health"? The conclusion is inescapable that the parties intended that coverage would be afforded if plaintiff suffered an *attack* of encephalitis between 1958 and 1961. The policy cannot be read in a vacuum. It must be construed with an eye to the background facts existing between the insured and the insurer. Had the parties not intended coverage for an *attack* of encephalitis between 1958 and 1961, coverage could have been omitted as was done during the 1954-1958 coverages.

██ Finally, even if the intentions of the insurer and the insured do not coincide and even if defendant's interpretation is arguably plausible, rendering the policy capable of two interpretations, the judgment must nevertheless be affirmed. When a policy is fairly susceptible of two different interpretations, that interpretation most favorable to the insured must be applied, even though a different meaning may have been intended by the insurer. *Thompson v. Ezzell, supra*; *Selective Logging Co. v. General Cas. Co. of America*, 49 Wn.2d 347, 301 P.2d 535 (1956).

The judgment is affirmed.

ROSELLINI, C. J., DONWORTH and HAMILTON, JJ., and REVELLE, J. Pro Tem., concur.