[No. 44768.   En Banc.   December 21, 1978.]

JONATHAN G. SHOTWELL, ET AL, *Respondents*, v.
TRANSAMERICA TITLE INSURANCE COMPANY,
*Petitioner.*

*Taylor & Taylor* and *S. Brooke Taylor,* for petitioner.

*David Johnson, Richard J. Niichel,* and *Niichel & Rutz, P.S.,* for respondents.

STAFFORD, J.—Petitioner Transamerica Title Insurance Co. seeks review of the Court of Appeals decision in *Shotwell v. Transamerica Title Ins. Co.,* 16 Wn. App. 627, 558 P.2d 1359 (1976). We affirm the Court of Appeals, but on narrower grounds.

In 1974 respondents Shotwell purchased unimproved property bordering upon the west bank of the Elwah River. It was described in their conveyance as:

The Northwest Quarter of the Northwest Quarter, Section 34, Government Lot 4, Section 27; Government Lot 1, Section 28; all in Township 31 North, Range 7 West W.M., EXCEPT *right of way for existing roads.* Situated in Clallam County, State of Washington.

(Italics ours.) Prior to the purchase, Transamerica issued respondents a preliminary commitment for title insurance in which it agreed to issue its policy subject only to exceptions listed in the commitment and in the policy form. The commitment excepted from title protection: "2. Right of way for existing roads."

Subsequently, Transamerica issued its title policy insuring respondents against loss or damage sustained by reason of:

Any defect in, or lien or encumbrance on, said title existing at the date hereof, *not shown in Schedule B . . .*

(Italics ours.) Schedule B lists five specific exceptions and contains four general exception clauses. Of the five specific exceptions only No. 2 is relevant. It reads "2. Right of way for existing roads." Of the four general exception clauses, only two are relevant. They read:

1. . . . public or private easements, streets, roads, alleys or highways, *unless disclosed of record by . . . decree of a Court of record . . .*
2. . . . rights or claims based upon instruments or upon facts *not disclosed by the public records but of which* rights, claims, instruments or facts *the insured has knowledge.*

(Italics ours.) Both the preliminary commitment and title policy described the property insured in language identical to that contained in respondents' conveyance.

At the time respondents purchased the property a narrow road and a dike were located thereon. The road was between 10 and 15 feet wide and began near the southwest

corner of the property. From there, the road, insofar as visible, traversed the property in a northeasterly direction but terminated 200 feet short of the Elwah River.

At each end of this visible road the county had erected markers to identify it as belonging to the county. The dike began at the northeasterly terminus of the visible road, as indicated by the county markers, and continued to the property's border on the Elwah River. At the time of purchase respondents were aware of the visible road, the county markers, and the dike.

Following respondents' purchase of the property and the issuance of Transamerica's title policy, respondents learned Clallam County had title to a right–of–way across the property. The county's title had been established in 1944 by decree entered in Clallam County cause No. 9075. This county right–of–way transected the *entire* property and was *40 feet* in width.

Upon learning of the 1944 decree, respondents filed this action claiming coverage under the title policy. They alleged that the existence of the county right–of–way constituted an encumbrance for which insurance was provided. It was respondents' theory that the policy's failure to specifically refer to either the 1944 decree or to the county right–of–way entitled them to recover losses sustained by reason of the county's right–of–way.

At trial it was established that the 10– to 15–foot–wide road was "generally" located within the county right–of–way. Further, respondent Jonathan Shotwell was found to have considerable experience in real estate matters, roads, easements and rights–of–way, although neither he nor his wife were found to have had knowledge of the right–of–way established by the 1944 decree when they purchased the property.

The trial court entered two conclusions of law in support of its judgment dismissing the complaint. First, the court held that the preliminary commitment and title policy specifically excepted the county right–of–way for the "existing public road." Second, the trial court concluded that the

existence of the visible road and county markers together with the specific exception of the "right of way for existing roads" in the legal description, preliminary commitment, and title policy were sufficient to put a reasonable person on notice of the existence of the full 40–foot right–of–way.

Respondents appealed. The Court of Appeals sua sponte held (1) that Transamerica had a duty to conduct a reasonable search which arose by implication from the insurance contract; and (2) that a policyholder has a reasonable expectation that he will be specifically informed of title defects revealed by such a search even though he has or should have had knowledge of the general nature of the defect. The Court of Appeals determined that Transamerica had breached this duty, reversed the trial court and remanded the cause with directions to ascertain respondents' damages.

Transamerica petitioned this court for review asserting that a duty to search and specifically disclose title defects imposed burdens upon it not contemplated by the insurance contract. We granted review because of the novel approach adopted sua sponte by the Court of Appeals.

■ We recognize such a "duty" might arise from the combined expectations of a title policy applicant and the service to be performed by title insurance companies. *See Williams v. Polgar,* 43 Mich. App. 95, 204 N.W.2d 57 (1973); *Pruett v. Mississippi Valley Title Ins. Co.,* 271 So. 2d 920 (Miss. 1973); *Hawkins v. Oakland Title Ins. & Guar. Co.,* 165 Cal. App. 2d 116, 331 P.2d 742 (1958); *Dorr v. Massachusetts Title Ins. Co.,* 238 Mass. 490, 131 N.E. 191 (1921); Restatement (Second) of Torts § 552 (1965). *See also* Comment, *Title Searches: Tort Liability in California,* 7 Santa Clara Lawyer 257 (1967); Q. Johnstone, *Title Insurance,* 66 Yale L.J. 492, 493–99 (1957); Comment, *Title Insurance: The Duty to Search,* 71 Yale L.J. 1161 (1962); J. Curtis, *Title Assurance in Sales of California Residential Realty: A Critique of Title Insurance and Title Covenants with Suggested Reforms,* 7 Pac. L.J. 1 (1976); S. Quiner, *Title Insurance and the Title Insurance*

*Industry,* 22 Drake L. Rev. 711, 714–17 (1973). However, even assuming such a "duty" might conceivably be warranted, there are several reasons for declining to impose one here. First, neither party submitted a brief on the issue. The absence of full adversary review of an issue warrants caution when considering such a departure from long–established precedent. Further, under the facts and the law governing this case, there is no need to impose such a "duty." Thus, we treat the appeal as if it had been addressed to us originally.

The question is solely one of law involving the correct interpretation to be given the *exclusionary phrase* "right of way for existing roads." Transamerica, relying on the language "right of way," contends the exclusionary phrase excludes the county's 40–foot right–of–way established by the 1944 decree. On the other hand, respondents emphasize the language "existing roads" in support of their contention that the exclusionary phrase excludes a right–of–way the same width and length as the existing road, *i.e.,* the visible road.

█ We note that each party places undue emphasis upon isolated portions of the exclusionary phrase. Insurance contracts should be interpreted in light of the actual language used and with respect to the policy as a whole, not in terms of isolated segments. *See Witherspoon v. St. Paul Fire & Marine Ins. Co.,* 86 Wn.2d 641, 650, 548 P.2d 302 (1976); *Morgan v. Prudential Ins. Co. of America,* 86 Wn.2d 432, 434, 545 P.2d 1193 (1976). However, a review of the unchallenged facts and the entire insurance policy reveals the reason for the parties' differing constructions of the same language.

Initially, we contrast the 1944 decree with the exclusionary phrase "right of way for existing roads." The 1944 decree established a *county* right–of–way, *40* feet in width, transecting the *entire* property. The decree describes the right–of–way by metes and bounds. In stark contrast, Transamerica's policy *lacks any specificity* whatsoever in its attempt to exclude the same right–of–way. The policy is

vague in three material respects: (1) it fails to legally describe the right-of-way; (2) it fails to incorporate the 1944 decree by reference or *otherwise;* and (3) it gives the policyholder no indication that the right-of-way, which Transamerica attempts to exclude, is a public one. In the place of precision based upon facts disclosed by the public records, the policy merely excludes a "right of way for existing roads" yet the only road "existing" is 10 to 15 feet wide extending between the county markers.

Partially because of the vague exclusionary language, there is no way to determine whether Transamerica was in fact referring to the county right-of-way established by the 1944 decree. This is particularly true in light of the general exception clauses also contained in Schedule B. Both sub-sections (1) and (2), by negative implication, provide coverage for public easements, streets, roads, alleys, highways, rights or claims which *are disclosed* by public record. Here, the county's right-of-way was disclosed by public record and thus under the *policy's own language* arguably is *completely insured.*

Finally, another disparity arises if we examine the road as it actually was located on the property. The only road actually *existing* on the property was between 10 and 15 feet in width extending over only a portion of the property. Yet, Transamerica now claims the exclusionary language covers the full 40 feet in width plus an additional 200 feet in length upon which no road in fact ever existed.

In light of the policy's ambiguity and the factual disparity, we must interpret the exclusionary language most favorably for the insured. Where a provision of a policy of insurance is capable of two meanings, or is fairly suscepti-ble of two constructions, the meaning and construction most favorable to the insured must be employed, even though the insurer may have intended otherwise. *Wither-spoon v. St. Paul Fire & Marine Ins. Co., supra* at 650; *Morgan v. Prudential Ins. Co. of America, supra* at 435; *Glen Falls Ins. Co. v. Vietzke,* 82 Wn.2d 122, 126, 508 P.2d 608 (1973); *Ames v. Baker,* 68 Wn.2d 713, 717, 415 P.2d 74

(1966). This rule applies with added force in the case of exceptions and limitations to a policy's coverage. *Witherspoon v. St. Paul Fire & Marine Ins. Co., supra* at 650; *Thompson v. Ezzell,* 61 Wn.2d 685, 688, 379 P.2d 983 (1963). Further, the language of an insurance contract must be interpreted as it would be understood by the average person purchasing insurance. *Witherspoon v. St. Paul Fire & Marine Ins. Co., supra* at 650; *Morgan v. Prudential Ins. Co. of America, supra* at 434; *Myers v. Kitsap Physicians Serv.,* 78 Wn.2d 286, 288, 474 P.2d 109, 66 A.L.R.3d 1196 (1970); *Ames v. Baker, supra* at 716.

█ Reviewing the language of the instant policy in light of the foregoing rules, we find it hard to believe an *average* person purchasing this type of insurance would contemplate that a 40–foot right–of–way extending over his entire property would have been excluded from policy coverage. Had the insurance company intended such an exclusion, it could easily have referred specifically to the 1944 decree known to it *or* legally described the right–of–way pursuant to that decree. Under the circumstances it is entirely understandable that an average person purchasing this insurance would be expected to conclude that the right–of–way excluded from coverage consisted solely of the right–of–way upon which there was in fact an *existing* road. Further, the average person purchasing such insurance would be expected to consider the exclusion in terms of its ordinary meaning, *i.e.,* in terms of an *existing road* as opposed to a *partially invisible* right–of–way. *Webster's Third New International Dictionary* (1966) defines the term "exist" at page 796 as having "actual or real being whether material or spiritual . . . [having] being in space and time . . ." Here, the only right–of–way clearly *existing in actual fact* was that right–of–way extending the width and length of the existing road as indicated by the county road markers. Such construction must be adopted where the policy is, on its face, arguably subject to two interpretations.

The policy is ambiguous as a matter of law. Thus, we hold the trial court erred in adopting the construction most

favorable to the *insurer* when it concluded that the county right–of–way established in 1944 was specifically excepted from policy coverage. The policy excepts only a right–of–way extending the width and length of the existing road as indicated by the county road markers. Any *right–of–way* owned by the county beyond the actual width of the *existing road* or *beyond the county markers upon which there was no existing road* is not excluded from policy coverage. This is not only a logical construction but also is the one most favorable to the insured. Further, the construction also reflects what an average purchaser would have understood. Thus, it must be adopted.

■ Transamerica also argues that it cannot be held to have insured against the county right–of–way because respondents acquired no title to the right–of–way from their grantor. Transamerica relies upon the fact that the description of *property insured* in its policy was identical to the grantor's description of *property conveyed*. In essence, Transamerica urges us to interpret the property description actually used in the title policy as an exclusion from policy coverage. However, as indicated earlier, the language does not exclude the *entire* county right–of–way. Rather, it excludes only that part upon which the existing road was in fact located. Further, petitioner's argument confuses the law of conveyancing with the principles of title *insurance*. As stated in *San Jacinto Title Guar. Co. v. Lemmon*, 417 S.W.2d 429, 431–32 (Tex. Civ. App. 1967) in addressing the same argument raised here:

> The description of the property in the policy is identical with and obviously copied from the description in the warranty deed by which appellees acquired title. . . . Unquestionably, the reference in the warranty deed to the recorded map or plat contemplated the purposes of the deed. *The description of the land in the policy was for the purpose of identifying the land covered by the policy and not, as appellant contends, for the purpose of limiting the insurance protection purchased.* In our opinion, this was the clear and unambiguous meaning of the policy. To hold otherwise would, in effect, require

appellees, who have purchased title insurance, to be their own insurer in so far as their title to the land, in the respect here under consideration, is concerned. Such a result would not be in keeping with the principal purpose of the policy . . .

(Italics ours.) In construing a policy of insurance the rules of conveyancing do not necessarily apply.

We turn finally to the trial court's conclusion that the road, gates, specific policy exception, and the policy's legal description were sufficient to put a reasonable person on notice that "a right–of–way for public roads existed on and across said real property."

■ The conclusion is susceptible of two interpretations relevant to an action upon the insurance policy. If interpreted to permit a policyholder's negligence to bar an action on the policy, the conclusion is erroneous. As stated in *Maggio v. Abstract Title & Mort. Corp.*, 277 App. Div. 940, 941, 98 N.Y.S.2d 1011, 1013 (1950):

> In the case of a title insurance policy, the insurer undertakes to indemnify the insured if the title turns out to be defective. That is the purpose of procuring the insurance and knowledge of defects in the title by the insured in no way lessens the liability of the insurer. The doctrine of skill or negligence has no application to a contract of title insurance.

*See also J.H. Trisdale, Inc. v. Shasta County Title Co.*, 146 Cal. App. 2d 831, 304 P.2d 832 (1956). Further, if the conclusion is intended to cover the interpretation given the policy by an average policyholder, we have already held such interpretation to be erroneous.

Thus, we find it unnecessary to reach the issue of whether a "duty to search and specifically disclose" exists. Nevertheless, we affirm the Court of Appeals insofar as it reversed the trial court and remanded the cause. The trial court is directed to ascertain respondents' damages in light of our opinion.

ROSELLINI, HAMILTON, UTTER, HOROWITZ, and HICKS, JJ., concur.

WRIGHT, C.J. (dissenting)—I dissent in part from the views of the majority. I take the view the words "EXCEPT right of way for existing roads" means exactly what it says. The majority says correctly that in case of an ambiguity the policy of title insurance (as with any insurance policy) shall be construed in favor of the insured. I do *not* agree, however, that any ambiguity exists, except possibly as to the approximately 200 feet beyond the existing road. As to that 200 feet, I am willing to accept the view of the majority.

As to the distance upon which a road actually existed, that is clearly within the exception.

The term "right-of-way" has several meanings in different contexts. The meaning involved here refers to a strip or tract of land within the confines of which some facility such as a road, highway, railroad, pipe line, electric transmission line or other similar thing is located. The right-of-way is generally greater in width than the part actually used for the facility.

The legislature has long recognized the rights-of-way for county roads. Laws of 1937, ch. 187, § 14 provided the right-of-way for any county road should be 30 feet on each side of the center line of the roadway unless the board of county commissioners should specifically designate a different width. The section also provided for additional width as needed for cuts and fills. That section has been substantially carried into the present laws as RCW 36.86.010, which reads as follows:

> From and after April 1, 1937, the width of thirty feet on each side of the center line of county roads, exclusive of such additional width as may be required for cuts and fills, is the necessary and proper right-of-way width for county roads, unless the board of county commissioners, shall, in any instance, adopt and designate a different width. This shall not be construed to require the acquisition of increased right-of-way for any county road already established and the right-of-way for which has been secured.

It is a matter of common knowledge that the traveled portion of few county roads is 60 feet in width. The legisla-

tive intent is plain that the right–of–way shall be greater in width than the actual road.

There are comparatively few judicial definitions of the term "right–of–way" in the context here relevant. One case in which the term is defined is *St. Louis, K.C. & C. R.R. v. Wabash R.R.*, 217 U.S. 247, 253, 54 L. Ed. 752, 30 S. Ct. 510 (1910) wherein it is said:

> "The ordinary signification of the term 'right of way,' when used to describe land which a railroad corporation owns or is entitled to use for railroad purposes, is the entire strip or tract it owns or is entitled to use for this purpose, and not any specific or limited part thereof upon which its main track or other specified improvements are located. *Joy* v. *St. Louis,* 138 U. S. 1, 44, 45, 46; *Territory of New Mexico* v. *United States Trust Co.,* 172 U. S. 171, 181–2; 174 U. S. 545, 546; *Chicago & Alton R. Co.* v. *People,* 98 Illinois, 350, 356–7; *Lake Erie & W. R. Co.* v. *Middlecoff,* 150 Illinois, 27, 37 N. E. Rep. 660, 663; *Pfaff* v. *Terre Haute & I. R. Co.,* 108 Indiana, 144, 148, 9 N. E. Rep. 93, 95.

Other cases to the same effect include *Deakyne v. Commissioners of Lewes,* 329 F. Supp. 1133 (D. Del. 1971); *Wilson v. Pacific Elec. Ry.,* 176 Cal. 248, 168 P. 128 (1917); *Moakley v. Los Angeles Pac. Ry.,* 139 Cal. App. 421, 34 P.2d 218 (1934); *Tormaschy v. Hjelle,* 210 N.W.2d 100 (N.D. 1973); *Biles v. Tacoma, O. & G.H. Ry.,* 5 Wash. 509, 32 P. 211 (1893). In the last mentioned case a right–of–way 400 feet in width was reserved for railroad purposes.

In the instant case, the right–of–way granted by judicial decree was 40 feet in width. Given what I consider to be the appropriate definition of right–of–way, it was, and is, the right–of–way for an existing road. Thus, by clear and unambiguous language, this entire right–of–way is excepted from the coverage of the policy of title insurance. I would, therefore, reverse the Court of Appeals and reinstate the judgment of the trial court insofar as the same relates to the existing road.

BRACHTENBACH and DOLLIVER, JJ., concur with WRIGHT, C.J.