[No. 22301-1-I.   Division One.   May 30, 1989.]

TRANSAMERICA TITLE INSURANCE COMPANY, *Respondent*, v. NORTHWEST BUILDING CORPORATION, ET AL, *Appellants*.

*Charles P. Nomellini, Michael K. Vaska,* and *Foster, Pepper & Shefelman,* for appellants.

*Jerry H. Kindinger, John P. Mele,* and *Ryan, Swanson & Cleveland,* for respondent.

WINSOR, J.—Northwest Building Corporation and other entities (Northwest) appeal from an order granting summary judgment to Transamerica Title Insurance Company (Transamerica). The judgment in favor of Transamerica established that Transamerica had no obligation, duty or liability to its insured, Northwest, for the encroachment of structures located on Northwest's property onto property owned by the City of Renton.

In October 1983, Northwest purchased the Renton Shopping Center (the Center). Prior to closing, Transamerica issued a preliminary commitment to insure Northwest's title to the Center under an American Land Title Association (ALTA) standard title insurance policy. This policy insured Northwest against loss or damage resulting from

defects in title, lack of right of access, and unmarketability of title. In accordance with Northwest's request, Transamerica issued a broader policy at closing, deleting a standard ALTA policy exclusion pertaining to "encroachments or questions of location, boundary and area, which an accurate survey may disclose."

Northwest had the Center surveyed in the spring of 1984. The survey revealed that parts of a few parking stalls and a driveway extended beyond the Center's legal boundary onto city–owned rights of way. Transamerica filed this declaratory judgment action to determine whether it could be held liable for loss or damage resulting from the Center's encroachments onto city property. The trial court granted Transamerica's motion for summary judgment. We affirm.

Transamerica contends that its policy's coverage is strictly limited to land legally described in Schedule A of the policy. In support of this contention, Transamerica relies on the definition of "land" contained in the policy. This definition includes a provision that "the term 'land' does not include any property beyond the lines of the area specifically described or referred to in Schedule A."[1] Transamerica argues that this definition is plain, unambiguous, not susceptible to judicial interpretation, and that it clearly establishes that Transamerica's policy does not cover the Center's encroachments onto surrounding property.

Northwest characterizes Transamerica's contentions as an attempt to use a legal description of real property as an exclusion to title insurance coverage. Northwest contends that the Supreme Court declared this to be impermissible in *Shotwell v. Transamerica Title Ins. Co.,* 91 Wn.2d 161, 588 P.2d 208 (1978). Northwest misconstrues the holding in *Shotwell.*

In *Shotwell,* the insured's title insurance specifically excluded from coverage losses or damages resulting from

---

[1]The policy's definition of "land" includes improvements which by law constitute real property and which are affixed to the land described specifically or by reference under Schedule A.

any "right of way for existing roads." (Italics omitted.) *Shotwell,* at 163. At the time of purchase, a marked, 10– to 15–foot–wide road partially traversed a corner of the insured's property. *Shotwell,* at 163–164. Following purchase of the property and issuance of the title insurance policy, the insured learned that the County had a 40–foot–wide right of way traversing the entire parcel of property. *Shotwell,* at 164. The 10– to 15–foot–wide road was located within this right of way. The insured filed an action for damages under the title insurance policy. The insurance company defended, claiming that the County's right of way was excluded under the "existing road" exclusionary provision. *Shotwell,* at 164–66.

The court held, as a matter of law, that the right of way exclusionary provision was ambiguous and susceptible to different constructions. The court, therefore, adopted the construction most favorable to the insured. *Shotwell,* at 167. In light of the provision's lack of specificity, the court concluded that it was impossible to determine whether "right of way for existing roads" in fact referred to the County's right of way. *Shotwell,* at 167. The court found that an average person purchasing this type of insurance might reasonably conclude that "the right–of–way excluded from coverage consisted solely of the right–of–way upon which there was in fact an *existing* road." *Shotwell,* at 168.

The court also rejected the insurer's argument that because the policy's description of property covered by the policy was the same as the grantor's description of the property conveyed, the insured obtained no title to the County's right of way and thus was not covered against its loss. *Shotwell,* at 169. It was in that context that the court said that "[t]he description of the land in the policy was for the purpose of identifying the land covered by the policy and not, as [the insurer] contends, for the purpose of limiting the insurance protection purchased." (Italics omitted.) *Shotwell,* at 169 (quoting *San Jacinto Title Guar. Co. v. Lemmon,* 417 S.W.2d 429, 431–32 (Tex. Civ. App. 1967).

■ Northwest's reliance on *Shotwell* fails for three reasons. First, unlike the policy terms in *Shotwell,* the express terms of the instant policy are not ambiguous, and Northwest does not contend that they are.[2] The policy specifically covers only land described in Schedule A. This description explicitly excludes land extending beyond the boundaries of the legal description. The encroaching areas of land and improvements at issue extend beyond the borders of the legal description, and thus are expressly excluded from coverage by the policy's unambiguous terms.

Second, in *Shotwell,* the disputed section of property lay wholly *within* the boundaries of the policy's legal description of land covered by the policy. Thus, the question of coverage did not depend on identifying the boundaries of the insured property. Rather, the dispute concerned the extent of coverage within those defined boundaries in light of an ambiguously phrased exclusionary provision. To hold that Transamerica's title insurance coverage extends beyond the policy's specifically defined property boundaries would effectively eliminate any way of conclusively defining the reach of the insurance policy's protection. The title insurer would be exposed to potentially limitless liability on its policy. We decline to interject such uncertainty into title insurance coverage.

Third, contrary to Northwest's contention, *Shotwell* does not hold that a legal description of land covered by a title insurance policy cannot be used as an exclusion to the policy's coverage. Rather, *Shotwell* holds that a policy's description of land may *identify* the land covered by the policy, but may not *limit* the "insurance protection purchased." 91 Wn.2d at 169. Schedule A's legal description of the land covered by Transamerica's policy did exactly what the *Shotwell* court intended—identify the land for which

---

[2]Rather, Northwest contends that deletion of an express provision in the initial coverage purchased by Northwest created an ambiguity regarding the extent of coverage. Northwest, however, points to no express provision in the policy which it claims is ambiguous in itself.

Northwest purchased protection. The policy insured against loss or damage from certain defects in title within this defined area. If Northwest desired to insure against the risk that improvements on its land encroached onto surrounding property, it could have requested such coverage.[3] Northwest does not contend that Transamerica used the description to limit the policy's protection within its defined parameters of coverage. Therefore, its reliance on *Shotwell* is misplaced.

Northwest further contends that because it purchased extended coverage requiring Transamerica's deletion of the exclusion for "encroachments or questions of location, boundary and area" disclosed by an accurate survey, the policy inferentially provided coverage for such matters. We disagree. Provisions regarding surveys and encroachments appear nowhere in the policy. It is simply irrelevant that the policy as initially proposed and rejected contained those exclusions. The only authority Northwest cites in support of its contention that such coverage should be presumed are the Washington Real Property Deskbook and the alleged custom in the industry. The former is not sufficient authority and the latter would be relevant only if the terms of the insurance policy were ambiguous.

Accordingly, the order granting Transamerica's motion for summary judgment is affirmed.

COLEMAN, C.J., and WEBSTER, J., concur.

Review denied at 113 Wn.2d 1008 (1989).

---

[3]We note that such a provision may arguably have existed in Northwest's policy. Encroachment of property onto adjacent land may render the encroaching property unmarketable, a risk expressly covered by Northwest's title insurance policy. *See, e.g., Brown v. Herman,* 75 Wn.2d 816, 823–34, 454 P.2d 212 (1969); Annot., *Encroachment of Structure on or Over Adjoining Property or Way as Rendering Title Unmarketable,* 47 A.L.R.2d 331 (1956); *see generally* Annot., *Defect in, or Condition of, Adjacent Land or Way as Within Coverage of Title Insurance Policy,* 8 A.L.R.4th 1246 (1981). Because the parties failed to raise this issue, we decline to consider it in deciding this case. RAP 9.12, 10.3(g); *American Universal Ins. Co. v. Ranson,* 59 Wn.2d 811, 815, 370 P.2d 867 (1962).