Ashley D. BRANNING, et ux., et al., Plaintiffs,

v.

CNA INSURANCE COMPANIES, et al., Defendants.

AMERICAN CASUALTY CO. OF READING, PENNSYLVANIA, a foreign corporation, Third Party Plaintiff,

v.

Theodore K. STRAND; Raymond M. Gray and Linda M. Gray, and the marital community thereof; James McMillan and Ruth McMillan, and the marital community thereof; Joseph Wozniak and Jane Doe Wozniak, and the marital community thereof, Third Party Defendants.

No. C88–764R.

United States District Court, W.D. Washington, at Seattle.

Nov. 17, 1989.

* Editor's Note: The correction called for has been made in the memorandum opinion.

See also, 721 F.Supp. 1180.

J. Ronald Sim, Stoel, Rives, Boley, Jones & Grey, Marc Allen Boman, James P. Savitt, Perkins Coie, John W. Lundin, Seattle, Wash., Scott A. Candoo, Tacoma, Wash., John E. Heath, Jr., Witherspoon, Kelly, Davenport & Toole, Spokane, Wash., and Carl J. Carlson, and Charles Dean Little, Lesourd & Patten, Seattle, Wash., for plaintiffs.

Stafford, Frey, Cooper & Stewart, Seattle, Wash., David M. Gische, Wallace A. Christensen, Ross, Dixon & Masback, Washington, D.C., and Thomas M. Fitzpatrick, Seattle, Wash., for defendants.

Charles E. Watts, Bellevue, Wash., and Robert J. Henry, Cable, Langenbach, Henry, Edmunds & Kinerk, Seattle, Wash., for third party defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT IN PART

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on cross motions for partial summary judgment regarding the scope of coverage in a Directors and Officers Liability insurance policy purchased by plaintiffs from defendants. Having heard oral argument and having reviewed the motions, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

## I. FACTUAL BACKGROUND

Plaintiffs are former officers and directors of Home Savings and Loan Association[1]. Plaintiffs purchased a Directors and Officers ("D & O") liability policy issued by defendants CNA/American Casualty Insurance Companies (hereinafter "CNA/American Casualty"), to protect their personal assets from exposure to a potential adverse judgment in the event of litigation[2]. The policy period covered July 1, 1984 to July 1, 1985.

Plaintiffs are currently defendants in a companion suit before this court brought by the Federal Savings and Loan Insurance Corporation (FSLIC). That suit, *FSLIC v.*

---

**1.** Named plaintiffs include Ashley D. Branning *et ux.,* Preston E. Macy *et ux.,* Alan R. Smith *et ux.,* John R. Shepherd *et ux.,* Patricia Strand, and the FSLIC. They will be collectively referred to herein as "plaintiffs".

**2.** In addition to CNA Insurance Companies and American Casualty Company of Reading, PA, two other named defendants are Continental Casualty Company and National Fire Insurance Company. All four insurance companies are

*Gray,* involves claims of alleged mismanagement of Home Savings and Loan Association. Plaintiffs rely on the D & O policy issued by CNA/American Casualty to protect their personal assets from exposure to an adverse judgment at that trial. The litigation is complex and involves numerous defendants, resulting in defense costs al ready approaching or exceeding $3 million.

Declaration 3 of the D & O policy states that the aggregate limit of liability under that policy is $3 million each year, subject to a retention amount of $5000 for each loss under the Policy. Defendants take the position that any and all costs which it pays for defense of the claims in *FSLIC v. Gray* against the covered officers and directors, including attorneys fees, are to be paid out of the $3 million limit of liability. Plaintiffs take the position that these costs may not be deducted from the limits of liability under the policy both because the policy does not so provide and because the deduction of defense costs is contrary to public policy.

## II. DISCUSSION

A grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630–31 (9th Cir.1987); *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985). Here, two issues of law are presented for the court: whether or not the insurance policy is ambiguous on its face and whether this type of policy should be deemed to be contrary to public policy and therefore void. Final construction of the insurance contract involves the court's evaluation of extrinsic evidence, as is discussed *infra.* Defendants argue that this extrinsic evidence may include a factual question involving the knowledge and intent of the insureds. The court, therefore,

identified in the complaint as joint venturers or

issues its finding as to the interpretation of the insurance contract on its face, and postpones its final ruling on the cross motions until further discovery is completed as to the factual issue.

### A. Interpretation of the Insurance Policy

Plaintiffs and defendants disagree as to whether or not the policy is ambiguous. In support of their cross motions, the parties offer two different interpretations of several policy clauses referring to the definitions of "Loss" and "Limits of Liability." The provisions relevant to the issue of ambiguity are Clauses 1(d), 4(a) and 4(b).

Clause 4 is titled "Limits of Liability." Clause 4(a) reads:

The insurer shall be liable to pay one hundred percent (100%) of any Loss (including costs, charges and expenses as referred to in Clause 5) in excess of the retention amount shown under Item 4 of the Declarations up to the Limit of Liability stated in Clause 4(b) below. One retention amount shall apply to each and every Loss.

Clause 4(b) (as amended in Endorsement 9) reads:

The Limit of Liability shall be the amount stated in Item 3 of the Declarations, which amount shall be the maximum aggregate liability of the Insurer with respect to claims made in each Policy Year. The last Policy Year shall include the extension of coverage granted under Clause 2(b). For purposes of this Clause 4(b), a claim shall be deemed to be made at the date that notice is given to the Insurer pursuant to Clause 6(a) or 6(b), or at the date the claim is made against the Directors and Officers, whichever shall occur first.

The definition of "Loss" in Clause 1(d) says:

The term "Loss" shall mean any amount which the Directors and Officers are legally obligated to pay or for which the

partners.

Association is required to indemnify the Directors or Officers, or for which the Association has, to the extent permitted by law, indemnified the Directors and Officers, for a claim or claims made against the Directors and Officers for Wrongful Acts and shall include but not be limited to damages, judgments, settlements, costs (exclusive of salaries of officers or employees), and defense of legal actions, claims or proceedings and appeals therefrom, and cost of attachment or similar bonds, provided however, such Loss shall not include fines or penalties imposed by law or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Plaintiffs argue that the language of the separate clauses 4(a) and 4(b) makes a distinction between payments related to "losses" and payments related to "claims made." The term "limit of liability" is discussed in both clauses. Plaintiffs point out that Clause 4(b) as amended defines the limit of liability not in terms of losses, but specifically in terms of claims: "The Limit of Liability shall be the amount stated in Item 3 of the Declarations, which amount shall be the maximum aggregate liability of the Insurer *with respect to claims made....*" Plaintiffs state that unlike a Loss, which is defined to include costs and defense of legal actions, a "claim" is merely a demand for compensation. *Safeco Title Insurance Co. v. Gannon,* 54 Wash. App. 330, 334, 774 P.2d 30 (1989). Therefore, plaintiffs reason that Clause 4(b), expressly and by definition, establishes that the limit of liability applies only to satisfying the demand for compensation.

The term Loss is defined in Clause 1(d) as including both amounts that must be paid to resolve a claim as well as defense costs related to the claim. Plaintiffs interpret the combination of clauses to mean that defense costs are covered by the policy, but are not deductible from the limit of liability. Plaintiffs' interpretation is that CNA/American Casualty is required to pay 100 percent of any amount needed to resolve a claim, but only up to the $3 million limit of liability, *and* to pay 100 percent of other elements of Loss, including defense costs.

At oral argument, plaintiffs argued that this interpretation is consistent with the language of the insuring clause (a) at the beginning of the policy, which states that the Insurer will pay "all Loss which the Directors and Officers or any of them shall become legally obligated to pay." In the absence of clear statements to the contrary, the language about legal obligations to pay suggests a focus on providing coverage for amounts needed to satisfy a court judgment or settlement.

Defendants respond that there is no ambiguity in the policy. They argue that the clauses should be interpreted together to mean that the Insurer is liable for all Loss, which includes both judgment and defense costs, up to the $3 million liability limit. Specifically, they point to the language in Clause 4(a), "The Insurer shall be liable to pay one hundred percent of any Loss ... up to the Limit of Liability stated in Clause 4(b) below." Since the definition of Loss includes "defense of legal actions," defendants argue that the Limit of Liability places a $3 million cap on everything. Further, they respond that plaintiffs create an "illusory distinction" between liability for losses and liability for claims. *See* Defendants' Memorandum in Opposition to the Motion of Insureds and FSLIC for Partial Summary Judgment Concerning Scope of Insurance Coverage and in Support of its Cross–Motion for Partial Summary Judgment at 9. They state that the phrase "claims made in each policy year" in Clause 4(b) simply specifies how the limitation is to be applied—i.e., the applicable annual limit is determined by the year in which a claim is made, not the year in which the Loss is incurred. Their position is that the definition of Loss should end the court's inquiry.

The cross motions require the court to apply Washington law in interpreting the policy. *See Washington Pub. Util. Dists. v. Public Util. Dist. No. 1,* 112 Wash.2d 1, 771 P.2d 701 (1989). In construing the language of an insurance contract, Washington courts recognize that these contracts are prepared by the insurer and

usually offered to the insured on a take-it-or-leave-it basis. Rather than making an in-depth factual analysis of the parties' subjective intent at the time of contracting, the court must determine the content of the contract through a practical and non-technical reading of its terms. *See, e.g., Continental Ins. Co. v. Paccar, Inc.*, 26 Wash.App. 850, 614 P.2d 675 (1980). The policy should "be given a fair, reasonable and sensible construction as would be given to the contract by the average person purchasing insurance." *Grange v. Brosseau*, 113 Wash.2d 91, 95, 776 P.2d 123 (1989). "A policy provision is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Morgan v. Prudential Ins. Co.*, 86 Wash.2d 432, 435, 545 P.2d 1193 (1976). Further, "where a provision of a policy of insurance is capable of two meanings, or is fairly susceptible of two constructions, the meaning and construction most favorable to the insured must be employed, even though the insurer may have intended otherwise." *Shotwell v. Transamerica Title Insurance Co.*, 91 Wash.2d 161, 167–68, 588 P.2d 208 (1978); *also, Eurick v. Pemco Ins. Co.*, 108 Wash.2d 338, 340, 738 P.2d 251 (1987). This rule applies with "added force in a case of exceptions and limitations to a policy's coverage." *Shotwell*, 91 Wash.2d at 168, 588 P.2d 208.

There is no Washington case law interpreting this type of insurance policy language as it relates to the inclusion of defense costs within liability limits. This court looks to the language of the policy, and evaluates whether an average purchaser of this CNA/American Casualty policy could reasonably and fairly construe it to provide $3 million of coverage for claims as well as 100 percent coverage for other expenses and defense costs.

The court finds the necessity of having to juxtapose three different clauses appearing on different pages, combined with the choice of policy language that simultaneously uses the separate terms of "claims" and Loss, in the absence of any clear statement that defense costs are included within the cap, creates sufficient uncertainty as to the intended meaning of the insurer. An average person purchasing such a policy could reasonably conclude that the liability cap of $3 million applied to claims made, and that losses including defense costs were to be calculated separately.

Defendants rely on a series of cases involving insurance policy provisions where defense costs were found to be inclusive within the liability limits. Defendants emphasize the California case *Harbor Insurance Co. v. Superior Court*, No. E006522 (Cal.Ct.App. May 12, 1989). The court does not find this case applicable in evaluating the policy at issue. In *Harbor Insurance*, the Appellate Court reviewed the trial court's interpretation of a D & O liability policy that defined "loss" to include "subject to the applicable limits and conditions of this policy, ... damages, judgments, settlements, and costs charges and expenses incurred in the defense of actions, suits or proceedings and appeals therefrom." The trial judge had declared, without elaboration, that this clause was ambiguous and decided that the issue of attorneys' fees depleting the indemnity coverage must be resolved against the insurer. On appeal, the Fourth District rejected this interpretation, finding that the policy language was clear in its inclusion of defense costs within the policy limits.

Unlike the case before us, the plaintiffs in *Harbor Insurance* argued that the phrase "charges and expenses incurred in the defense of action, suits or proceedings" *did not* mean to include attorneys' fees. The appellate court found that the phrase was unambiguous in referring to attorneys' fees. In this case, plaintiffs do not argue that the phrase "costs and defense of legal actions" does not include attorneys' fees. Conceding that point, they argue instead about the construction and juxtaposition of the various policy clauses.

Defendants also rely on other cases involving interpretations of Loss clauses. *Okada v. MGIC Indemnity Corp.*, 823 F.2d 276 (9th Cir.1986); *Continental Casualty Co. v. Board of Education*, 302 Md. 516, 489 A.2d 536 (1985); *Gon v. First State Ins. Co.*, 871 F.2d 863, 868 (9th Cir.

1989); and *Board of Education v. CNA Insurance Co.*, 647 F.Supp. 1495 (S.D.N.Y. 1986), *aff'd*, 839 F.2d 14 (2d Cir.1988).

■ The court does not find the above cases useful to the interpretation task at hand. In these cases the courts were not called upon to determine whether defense costs could be deducted from the limits of liability under the policy, but simply accepted—with little or no analysis of the issue—the validity of this proposition. For example, in both *Okada* and *Gon*, the court was determining at what point in time the costs or losses were to be paid, not whether the defense costs were to be deducted from liability. The cases do acknowledge that it is possible for a policy to allow defense costs to be deducted from the liability cap, but that was not the central question before those courts. This court does not dispute that it is possible for defense costs to be contractually included within a policy's liability limits. However, such inclusion must be clearly and unambiguously stated, which is not the case here.

If CNA/American Casualty intended the "limit of liability" to apply to all losses, rather than only the amounts needed to resolve claims against the insureds, it would have been a simple matter for defendants to have made that clear. This is amplified by the fact that two other policies issued to Home Savings and Loan Association by CNA/American Casualty on the same day (an IRA and Keough policy and Pension and Welfare Benefit Plan policy) both contain a clear statement on the first page indicating that the limit of liability is inclusive of defense costs. No such statement appears in the D & O policy in question. Furthermore, in the clauses describing the Limit of Liability in both the IRA/Keough and Pension plan policies, the policy clearly states, "(a)ll costs, charges, expenses or settlements which are insured hereunder are considered to be part of, and not in addition to, this policy's Limit of Liability." No such clarification appears in the D & O policy.

Given the ambiguity already found within the D & O policy document, this is supporting evidence for the fact that a purchaser of insurance could reasonably review this policy and not be aware that the insurer sought to deduct defense costs from the limit of liability.

Anticipating this ruling, both parties have offered extrinsic evidence to support their positions. Before applying the rule of construction that ambiguities in an insurance policy are to be resolved against the insurer, the court must look to such extrinsic evidence to help resolve apparent ambiguity. Plaintiffs have submitted affidavits testifying to their lack of intent to purchase insurance that would potentially allow depletion of the liability coverage before settlement or judgment was reached. Defendants have submitted affidavits and a letter stating that they did not intend to sell insurance with "unlimited" liability, and stating that this fact was communicated to the house counsel of Home Savings and Loan.

At oral argument, defendants requested that the court grant them the opportunity to conduct discovery into the factual question of knowledge and intent on the part of the insureds. The court grants this request, and defers final ruling until such time as this discovery is conducted, and any new evidence is presented to the court.

### B. Public Policy Concerns

Plaintiffs' make a separate argument that deduction of defense costs from a policy's liability limit is contrary to public policy. In light of the court's ruling on the question of ambiguity within the policy in question, the court declines to reach the issue of public policy concerns at this time.

THEREFORE, 1) Defendants' motion for partial summary judgment is DENIED; 2) Plaintiffs' motion for partial summary judgment is GRANTED in part in that the court finds that the language of the policy in question is ambiguous. The court reserves construing the policy until after presentation of extrinsic evidence.