[No. 41449.    En Banc.    September 3, 1970.]

JOHN MYERS, *Petitioner*, v. KITSAP PHYSICIANS SERVICE, *Respondent.**

*John A. Bishop* and *Gary A. Cunningham,* for petitioner.

*Wallace & Best,* for respondent.

McGOVERN, J.—Plaintiff appeals from a superior court order dismissing his action for compensation allegedly due from the defendant under the terms of a contract. The court of appeals affirmed the trial court and we granted a petition for review of that order.

The defendant is a health care service contractor as defined by RCW 48.44.010(3) and plaintiff, through his employer, has been a premium paying member of the defendant corporation continuously since the year 1949.

Subsequent to the time he obtained membership in the defendant corporation, plaintiff began to suffer from a chronic kidney disorder. In 1960 the color of his skin changed, he suffered from severe headaches and from uremic poisoning. January 17, 1961, he was admitted as the

*Reported in 474 P.2d 109.

first patient of the Seattle Artificial Kidney Center and began to receive hospital hemodialysis treatments.

Defendant refused to pay for plaintiff's hospitalization and hemodialysis treatments, claiming that they were not included in the 1958 health care group policy under which plaintiff was covered. As required by the contract, plaintiff thereupon asked for a board of arbitration resolution of the disputed question, and on June 16, 1966, the board of arbitration ruled in favor of plaintiff. Defendant, however, still denied coverage and plaintiff filed suit in the Superior Court for Kitsap County. December 1966 that court granted a summary judgment in favor of plaintiff.

Thereupon, still during December 1966, defendant corporation advised plaintiff and other members that its basic health care contract would be modified effective February 1, 1967. The modification was placed into effect on that date and it excluded chronic kidney disorder treatments from coverage. Plaintiff's employer has continued to make premium payments for the plaintiff as a member of the group, but defendant has refused to provide kidney disorder treatments since February 1967.

The trial and appellate courts each held that plaintiff's group contract required the defendant to pay only for medical services actually rendered during a contract year. They also held that each group contract had a life term of 1 year only and that defendant had an absolute right to modify its contract at the beginning of each contract year. We reverse.

In pertinent part the contract in effect between the parties prior to the February 1, 1967 modification provided:

> In consideration of the statements contained in each application for coverage hereunder and payment in advance by the Group of monthly dues as set forth in each application, Kitsap Medical agrees to provide medical, surgical hospital and other services to each member enrolled hereunder, as occasion demands, during the life of this contract. All payments and services are subject to each of the terms and conditions of this contract and any endorsement, rider, or amendment thereto.
>
> . . .

PART THREE: BENEFITS APPLICABLE TO ALL MEMBERS

. . .

Group Health Care Service

KITSAP MEDICAL will furnish during any certificate year all necessary medical, surgical and hospital services required by any member under this contract for any illness or injury to the extent stipulated . . .

Plaintiff Myers contends that the defendant's contractual responsibility to provide medical and hospital assistance for him became fixed when his illness first necessitated medical assistance or hospitalization. Defendant, on the other hand, insists that its contractual liability is restricted only to payment of medical services rendered to the plaintiff during the period within which defendant agreed to provide those services and that after February 1, 1967 it no longer agreed to provide hemodialysis services for chronic kidney disorders.

■ To determine the issue, we look to the terms of the contract entered into between the parties. In doing so, plaintiff argues that we must employ the rules generally applicable to the interpretation of insurance contracts. Defendant expressly states that it does not contend otherwise. We agree and, accordingly, apply the law as argued for by plaintiff. We bear in mind, therefore, that our law is clear in holding that ambiguities in an insurance contract must be interpreted in the light most favorable to the insured, (*Thompson v. Ezzell*, 61 Wn.2d 685, 379 P.2d 983 (1963)), and that the language of an insurance contract should in fact "be interpreted in accordance with the way it would be understood by the average man purchasing insurance." *Ames v. Baker*, 68 Wn.2d 713, 415 P.2d 74 (1966). *See also, Tsapralis v. Public Employees Mut. Cas. Co.*, 77 Wn.2d 581, 464 P.2d 421 (1970).

Testing the policy before us in the light of those principles, we conclude that the plaintiff is entitled to service benefits[1] for hemodialysis treatments heretofore and hereafter received in an accredited hospital notwithstanding

---

[1]The total of all service benefits may not exceed $5,000 in any one contract year according to the terms of the policy.

defendant's attempted policy exclusion of February 1, 1967. Our consideration of the applicable policy provisions will admit of no other result.

"Kitsap Medical agrees to provide medical, surgical hospital and other services to each member enrolled hereunder, as occasion demands, during the life of this contract" is susceptible of the reasonable interpretation that the "life of the contract" is automatically extended to such time as may be required to medically treat and medically care for the injury or illness that occurs during the year of the contract. We find it difficult to believe that the "average man purchasing insurance" would, or could, contemplate from a reading of this contract that the defendant's obligation terminates when the clock strikes midnight and the contract year ends, even though the insured may still be hospitalized or in need of further medical treatment for an illness incurred during the contract year.

We have also concluded that the defendant corporation may have contemplated a situation with facts similar to those at hand when it drafted the health care contract. It provides that "Kitsap Medical will furnish during *any* certificate year all necessary medical, surgical and hospital services required by any member under this contract for any illness or injury . . ." The use of the word "any" in that sentence indicates to us that the defendant foresaw medical treatment for an illness or injury that would necessitate medical care for more than one contract year.

We therefore conclude that the contract before us, when considered for the purpose of granting or rejecting plaintiff's claim for hemodialysis hospitalization benefits after February 1, 1967, may reasonably be given more than one interpretation. Although the contract is a health service contract, one reasonable interpretation of its provisions would be grounded on the same legal principle applied generally in cases relating to health and accident insurance policies, *i.e.*, that plaintiff's rights under the contract became vested when medical treatment became necessary. Those rights being vested, the subsequent termination of the policy which created the right did not terminate the

vested right of the plaintiff to payment of services rendered and to be rendered. *See, Accident Policy-Termination-Effect,* Annot., 75 A.L.R.2d 876 (1961), concerning an insurer's liability under an accident policy where the policy was in force at the time of the accidental injury, but medical treatment and hospitalization were furnished in whole or in part after termination or lapse of the policy. We quote from that annotation, at page 877:

> It is submitted that the better view, which is supported not only by the more closely reasoned cases but which also conforms to what may be described as the general understanding as to the coverage of accident policies, is the one which extends the liability of the insurer to subsequent medical expenses.

Considering the ambiguity of the contract before us, we think that the rationale of the "better view" is as applicable here as it is in the accident insurance cases, and we so hold.

The defendant argues that the rule of consistency requires that all provisions of the 1958 group policy be made applicable if its liability for future medical coverage is grounded upon the terms of that policy. We do not agree. The 1958 group policy restrictively provided that the defendant would not be obligated to pay more than $10,000 on account of any member during such member's lifetime. Not only was that limitation removed but more liberal benefits were added to the group policy subsequent to 1958. Those changes were supported by a valuable consideration, to wit, the policy premium rates for plaintiff's coverage rose from $21.35 per month to $28.70 per month and those increased premiums have been paid by plaintiff.

The judgment of the trial court is reversed and the cause is remanded to it for entry of an order consistent with the views expressed herein.

HUNTER, C. J., FINLEY, ROSELLINI, HAMILTON, and HALE, JJ., and WILLIAMS, J. Pro Tem., concur.

NEILL, J. (concurring)—Plaintiff is an enrolled member in his employer's group prepaid medical plan. This 1958 health care service contract was for 1 year, automatically

renewable for succeeding years, but subject to cancellation at the end of any year by either the employer or the contractor.[2]

Commencing in 1960, a kidney ailment was manifested that required plaintiff to receive semi-weekly hemodialysis treatments on an artificial kidney machine. Current prospects are that he will require continuation of this treatment for life.

In 1966, contractual arbitration proceedings resulted in a finding that defendant was required to indemnify plaintiff for the costs of medical services for treatment of the kidney disorder.

Defendant changed the contract in a number of respects effective February, 1967. One such change was the addition of chronic hemodialysis to the list of exclusions of medical services payable or indemnifiable under the contract. This action followed.

The majority opinion finds an analogy in accident and health insurance policies under which the contingent event or the "covered risk" is the occurrence of an accident or the manifestation of an illness. It is noteworthy that the source from which the majority obtains its support (75 A.L.R.2d 876 (1961)) expressly states that it is "strictly limited to the consideration of the insurer's liability under an accident policy".

But whatever the contingent event protected by this contract, the crucial determination on this appeal pertains not to the event eliciting performance by Kitsap Medical but to the nature and extent of the performance due. The majority assumes that, because it construes the contingent event

---

[2]"Part Five: General Provisions

"N. This contract shall remain in effect [for 1 year] and it shall be automatically renewed from year to year unless the Group gives to Kitsap Medical, or Kitsap Medical gives to the Group, thirty (30) days' written notice prior to the anniversary date, of its election not to renew this contract. Kitsap Medical may, upon thirty (30) days' written notice, modify or adjust either the benefits or dues rates provided herein. However, in such event the Group shall have the right to terminate this contract by giving fifteen (15) days' written notice to Kitsap Medical prior to the effective date of such change."

to be like that in an ordinary insurance policy, the performance due is that of an ordinary insurer. I disagree. The nature and extent of the performance due does not flow, *a fortiori*, from the type of contingent event involved but must be gleaned, like the contingent event itself, from the terms of the contract.

This contract is a type of insurance. *Randa v. Bear*, 50 Wn.2d 415, 312 P.2d 640 (1957). However, the language thereof, like that of any contract, is to be given its usual and ordinary meaning, unless it is apparent that a special meaning is intended, or is necessary to avoid an unreasonable or absurd result. *Rew v. Beneficial Standard Life Ins. Co.*, 41 Wn.2d 577, 250 P.2d 956, 35 A.L.R.2d 891 (1952). Health care service contracts are regulated by the state under RCW 48.44. Under the terms of this statute (RCW 48.44.020), the insurance commissioner of the state is authorized to disapprove any health care service contract which is deceptive, misleading, unreasonable or unduly restrictive. It is apparent that the commissioner has not determined that this contract is unreasonable or otherwise contrary to public policy. *See* RCW 48.44.110 and 48.44.120. Thus I look to the usual and ordinary meaning of the language used by the contracting parties to determine its meaning.

The duty of defendant is spelled out in the opening paragraph of the contract:

HEALTH CARE SERVICE CONTRACT
(Sickness and Non-occupational Accidents)
Kitsap Medical agrees to provide medical, surgical hospital and other services to each member enrolled hereunder, as occasion demands, during the life of this contract. All payments and services are subject to each of the terms and conditions of this contract and any endorsement, rider, or amendment thereto.

Again, in Part Three of the contract, under the heading "Benefits Applicable to all Members . . . Group Health Care Service", it is provided:

KITSAP MEDICAL will furnish during any certificate year all necessary medical, surgical and hospital services re-

quired by any member under this contract for any illness or injury to the extent stipulated below. Also during the second and each succeeding certificate year each member is entitled to a renewal of the benefits listed in this Part. A certificate year [commences with enrollment and ends 12 months later].

An examination of these contract provisions to ascertain the event, condition or occurrence which would give rise to defendant's duty of performance under the agreement leads to two possible constructions. First, the language can be read to mean that the medical services rendered to the plaintiff is the contingent event. Yet, the language can be understood to mean that the contingent event is the illness or injury ("as occasion demands") and that following such event the defendant's performance is the furnishing of medical services (either directly or by indemnity of services from a non-participating physician or hospital) to meet the consequences of the event. Having thus determined that there is an ambiguity in the terms of the agreement, I would apply the rule that this type of contract will be construed in favor of an employee for whose benefit the group contract is drawn. *McCarty v. King County Medical Serv. Corp.*, 26 Wn.2d 660, 175 P.2d 653 (1946). *See* 43 Am. Jur. 2d *Insurance* § 277 (1969).

However, it is necessary to continue and examine the meaning of the term "life of this contract" as it affects defendant's duty of performance. It is not now contested that prior to the 1967 modification of the contract, plaintiff was entitled to $5,000 annual indemnity for expenses incurred in the treatment of his kidney disorder. These treatments were an obligation of Kitsap Medical under either interpretation of the coverage. The issue presently before us arises from defendant's 1967 action of excluding chronic hemodialysis from the contract.

The record supports the view that defendant did not cancel the group contract. By letters to enrolled members the company advised beneficiaries of changes in the contract, carefully calling attention to increases in certain ben-

efits, but stating nothing about the new exclusion for chronic hemodialysis.

Did the change in the contract excluding chronic hemodialysis fall within defendant's contract right to "modify or adjust either the benefits or dues rates"? I think not.

The exclusion of a particular type of medical service is obviously a modification of the contract, but may exceed the contract right to modify only "benefits". There is an ambiguity as to the parties' intentions in using the words "modify or adjust either the benefits or dues rates". The clause is not precise and can be read as providing only a limited right to modify benefit rates rather than a broader right to modify provisions relating to coverage. Applying the rule of construction that contract ambiguities are to be construed in favor of a contract beneficiary, the latter reading is adopted. *McCarty v. King County Medical Serv. Corp., supra.* Under this contract, Kitsap Medical had no power to exclude plaintiff's hemodialysis coverage under the guise of "modification".

Although I do not express an opinion as to the validity of the change, it is interesting to note that my view of defendant's right to modify the contract may have been tacitly conceded by the defendant when it changed the contract in 1967 by removing the modification clause quoted above and substituted therefor a provision that the defendant may make "revisions in the monthly premiums, or *in the provisions relating to coverage*". (Italics mine.) An exclusion of certain types of medical treatment is clearly a "provision relating to coverage" while such an exclusion is not clearly a modification or adjustment of "benefits or dues rates." Accordingly, I would also reverse.

DONWORTH, J. Pro Tem., concurs with NEILL, J.

October 28, 1970. Petition for rehearing denied.