Beatrice WULFFENSTEIN, Plaintiff
and Appellant,

v.

DESERET MUTUAL BENEFIT ASSOCI-
ATION, Defendant and Respondent.

No. 16335.

Supreme Court of Utah.

April 14, 1980.

Jay V. Barney of Day & Barney, Murray, for plaintiff and appellant.

David A. Westerby and Robert M. Dyer of Kirton, McConkie, Boyer & Boyle, Salt Lake City, for defendant and respondent.

WILKINS, Justice:

Plaintiff Beatrice Wulffenstein sued Health Services Corp. (now Intermountain Health Care Inc.), her employer, and Deseret Mutual Benefit Association (hereafter "defendant") to recover under a group medical expense policy issued by defendant to the employer. The action against the employer was dismissed and is not before us. The complaint against defendant was dismissed at the close of plaintiff's evidence, pursuant to Rule 41(b), Utah Rules of Civil Procedure. Plaintiff appeals that dismissal. We affirm. All statutory references are to Utah Code Ann., 1953, as amended, unless otherwise indicated.

Defendant issued to plaintiff's employer a "Group Hospital, Surgical, and Medical Expense Insurance Policy" to cover employees and their dependents. The policy provided for termination of individual coverage in the event of termination of employment. Plaintiff applied for and received coverage under this policy, and premium payments were deducted from her paychecks, concluding with her last paycheck on December 23, 1973. On December 28, 1973, while still an employee covered by the insurance policy, plaintiff was involved in an automobile collision, as a result of which she incurred the medical expenses involved here. For the purposes of this appeal we will assume the expenses were the result of the accident. Plaintiff's employer granted her a leave of absence (during which time she was still considered an employee by the terms of the policy), and thereafter she terminated her employment on or about April 1, 1974. She nevertheless continued to submit claims to defendant for expenses incurred as a result of the accident, including claims for surgery on January, 1975, until it became clear that the claims would not be paid.

Both parties stipulated that insurance coverage terminated by the end of March, 1974, and that all expenses before that date were paid by the defendant. Thus the insurance was in force on the date of the accident, but terminated before some expenses were incurred. At the close of plaintiff's evidence, the District Court dismissed the complaint. The Court found that the policy was unambiguous, that the loss insured against was medical expenses, incurred during employment and that since all expenses incurred by the stipulated termination date of March 31, 1974, had been paid, plaintiff could not recover for additional expenses incurred.

Plaintiff appeals, claiming she is entitled to recover for all expenses incurred as a result of the accident, no matter when the expenses were incurred; that the policy is ambiguous and she should therefore recover for all such expenses; and that the limitation on litigation claimed by defendant makes the contract void as against public policy.

This leaves as the major issue before us, the extent of the coverage in the policy. The policy issued by defendant in 1970, and in effect at the time of plaintiff's accident (with minor revisions not applicable here) provides: "The insurance of an employee shall automatically terminate immediately upon . . . : (1) The date termination of his employment occurs. . . ." Since employees on an authorized leave of absence are included in the class of employees eligible for insurance, the coverage terminated under this clause when plaintiff's leave of absence ended. As the coverage terminated after the accident, but before all expenses relating to the accident were incurred, we must examine the nature of the insurance contract before us and define the extent of its coverage. Plaintiff claims that the right to payment for all resulting expenses, whenever incurred, vested at the time of the accident. Defendant, however, claims it is liable only for those expenses incurred during employment.

"Insurance is a contract whereby one undertakes to indemnify another or pay or allow a specified or ascertainable amount or benefit upon determinable risk contingencies." Section 31–1–7. The policy involved here could have been an accident or sickness policy, in which case the risk insured against would have been an accident or illness, and rights to any claims arising therefrom would have vested at the time of the accident or illness. However, the policy issued by the defendant was not an accident or sickness policy, but a medical expense policy. As the District Court found, the risk insured against was the incurring of expenses, and until expenses were incurred there was no loss. Thus, defendant is not liable for expenses incurred after the coverage terminated. An analysis of the language of the policy makes this clear.

The policy is described on the first page as being a "Group Hospital, Surgical, and Medical Expense Insurance Policy." "Eligible Charges" are defined as "those charges incurred by an employee or his dependent for injury or sickness. . . ." Throughout the description of benefits accorded, references are to types and amounts of charges, not to the *cause* of such expenses. The language used is "hospital expenses incurred by an employee," "the actual cost charged an employee," "the usual or customary charges to an employee," "when an employee undergoes treatment," "when an employee incurs eligible charges." As noted above, there is only one reference to expenses resulting from an accident (in the supplemental accident section) and that is intended as an added limitation on recovery. The rest of the policy covers only expenses incurred *while an employee.* Plaintiff cannot be said to have incurred all these expenses at the time of the accident when the policy states, "The charge for a service or a purchase shall be deemed to be incurred on the date the service is performed or the purchase is made." Such a construction would rewrite the insurance contract for the parties and create a new contractual obligation for the defendant.

Other jurisdictions have drawn a distinction between accident and sickness policies on the one hand and expense policies on the other. In *St. Paul Fire and Marine Insurance v. Purdy,*[1] an employer's group policy (which terminated for lack of payment of premiums) insured "against loss resulting from certain expenses incurred by the employee *while insured hereunder* because of accidental bodily injuries. . . ." That policy was construed as providing coverage against expenses, not injury, and recovery was denied where the injury occurred while the policy was in force, but the expenses were not incurred until after the coverage had terminated. The same result was

---

1. 129 Ga.App. 356, 199 S.E.2d 567 (1973).

reached in *Bartulis v. Metropolitan Life*,[2] involving a group hospitalization and medical expense policy. As in this case, the plaintiff there was injured before termination of his insurance coverage, but incurred expenses relating to the injury after termination. The claims for post-termination expenses in *Bartulis* were denied, that Court holding that liability did not arise when the injuries were sustained. *Cohen v. Northwestern National Life Insurance Co.*[3] reached the same conclusion where a surgical procedure was recommended during employment and coverage, but not actually performed until after the insurance coverage was terminated. Since the expense was not considered to have been incurred when the condition was diagnosed, and the insured was not contractually obligated for the expenses while the policy was in force, no recovery was allowed against the insurer. Conversely, in *Cassidy v. Springfield Life Ins. Co.*[4] recovery under such an expense policy was allowed for expenses incurred after insurance coverage began, although the expenses resulted from an illness which began before coverage commenced.

This case, like those just discussed, involves an expense policy, not an accident policy, and thus recovery must be denied for "[i]nsurance is a matter of contract, not sympathy." [5]

An opposite result is not dictated by *Service Life v. Branscum*,[6] as plaintiff urges. Although that case allowed recovery for expenses incurred after the insurer tried to terminate the policy, the result can be explained (as the concurring opinion suggested) on the ground that the insurance policy was never actually terminated. The Court in *Branscum* quotes from *Harman v. American Casualty Co.*: [7]

A contract of insurance is an agreement to indemnify the insured against loss from contingencies which may or may not occur. When the contingency arises, then and only then does the liability of the insurer become a contractual obligation (citing authorities). There then remains no "risk" which could be the subject matter of insurance. The contingency having occurred, there is nothing the insurer can unilaterally do to alter the policy with respect to a loss that is already in being. All that remains is the determination of the extent of the damage.

We do not disagree with this statement; however, the contingency insured against in the case at bar is *not* an accident or illness but the incurring of expenses. Since the contingency insured against did not occur before the termination of coverage, there was no claim to be preserved beyond the date of termination. The annotation at 75 A.L.R.2d 876 (1961), cited to us by plaintiff, is not helpful, as it deals with accident policies, not expense policies; it does point out, though, that where a group policy is involved, its purpose is to safeguard employees, a purpose which ceases to exist when employment is terminated, as here.

Plaintiff, relies heavily on the case of *Myers v. Kitsap Physician Service*,[8] but we do not find that case persuasive. The dispute in *Myers* concerned the provisions of a one year, renewable contract binding the defendant, a health care service contractor (as defined by Washington statute) to provide necessary health services. The contract was not an insurance policy per se, but prepayment for medical services to be rendered by the defendant. The Plaintiff *Myers*, long after he became covered by the health care contract, started hemodialysis treatments for a kidney disorder. After litigation which resulted in a finding that the defendant was liable for the expenses of the hemodialysis, the defendant attempted to exclude hemodialysis when it renewed

2. 72 Ill.App.2d 267, 218 N.E.2d 225 (1966).

3. 124 Ill.App.2d 15, 259 N.E.2d 865 (1970).

4. 106 R.I. 615, 262 A.2d 378 (1970).

5. *Supra*, note 1, 199 S.E.2d at 567, 569.

6. 234 Ark. 463, 352 S.W.2d 586 (1962).

7. 155 F.Supp. 612 (S.D.Cal.1957).

8. 78 Wash.2d 286, 474 P.2d 109, 66 A.L.R.3d 1196 (1970).

the contract for another year. The Washington Supreme Court held that the contract was ambiguous, and that the plaintiff's rights became vested when medical treatment became necessary, so later termination of the particular policy in force at that time did not affect that right to treatment. The Court did, it is noted, allow modifications favorable to plaintiff, changing the limits on benefits from a lifetime benefit of $10,000 to a yearly benefit of $5,000. The concurring opinion in *Myers* would have reached the same result on the grounds that defendant had reserved the right to modify or adjust the "benefits," but modification of benefits did not include exclusion of a benefit formerly extended. The Court in *Myers* appears to have reached its result by a keen concern to protect the plaintiff in an unusual situation. Unlike *Myers*, this policy is not ambiguous, and its terms clearly extend coverage only for expenses incurred by employees. But if *Myers* can, *arguendo*, be cited as authority for us to reverse here, we choose not to follow it.

Because the policy in question is an expense policy, not an accident or sickness policy, Sec. 31–19–25 does not apply. This is obvious from the title of the statute: "Accident insurance—Annulment of," and from the nature of the loss insured against.

Finally, we do not agree, as plaintiff urges, that the contract of insurance here violates public policy. Plaintiff had the choice of applying for, paying for, and receiving the benefits of this policy, or of obtaining insurance elsewhere. The fact that she chose to apply for the coverage offered by defendant emphasizes that this is her contract, not just that of her employer. The contract she entered into conformed with State law, and was approved by the Commissioner of Insurance, and was not ambiguous. The Utah Legislature in 1979 expressly recognized that "group hospital or surgical expense insurance" and "major medical expense insurance" when it required conversion privileges in such policies. Secs. 31–20–16 and 17.

CROCKETT, C. J., and MAUGHAN, HALL and STEWART, JJ., concur.