PROVIDENCE HOSPITAL v MORRELL

Docket No. 88161. Submitted April 13, 1987, at Detroit. Decided June 15, 1987. Leave to appeal applied for.

United Fidelity Insurance Company insured Russell A. Morrell and his wife, Norah, under a group medical insurance policy issued to Russell Morrell's employer. In May of 1982, United Fidelity notified the employer that the group policy coverage would terminate as of July 1, 1982, in accordance with the thirty-day notice requirement contained in the policy. Norah Morrell was pregnant at the time of the termination. She delivered her baby at Providence Hospital in September of 1982, incurring expenses of over $2,000. United Fidelity declined coverage based on the termination and Russell Morrell failed to pay the bill. Providence Hospital then brought an action in district court against Russell Morrell seeking payment of the hospital bill. Russell Morrell then instituted a third-party action against United Fidelity. The district court entered a judgment in favor of Russell Morrell for $2,329.05 plus interest. United Fidelity appealed and the Wayne Circuit Court, Helene N. White, J., affirmed. United Fidelity appeals by leave granted.

The Court of Appeals *held:*

1. United Fidelity properly complied with the termination provision of the policy. However, the public policy of this state will not permit enforcement of the cancellation clause where the effect is to render a now uninsurable person without insurance coverage for those conditions which exist at the time of termination. An insurance company cannot assume a risk when a person is apparently healthy and, thereafter, disavow the risk when the person has developed an illness or other coverable condition.

2. Where, as here, an insured develops a condition during the

REFERENCES

Am Jur 2d, Insurance §§ 383, 386, 437-442.

Liability insurer's unconditional right to cancel policy as affected by considerations of public policy. 40 ALR3d 1439.

Remedies and measure of damages for wrongful cancellation of life, health, and accident insurance. 34 ALR3d 245.

life of a health insurance policy and that policy is subsequently cancelled or terminated by the carrier, the carrier remains liable for those expenses which arise from that condition where the expenses would be covered by the policy had it not been terminated.

Affirmed.

1. INSURANCE — CANCELLATION OF INSURANCE.

The public policy of Michigan will not permit the enforcement of a health insurance policy termination or cancellation clause where the effect is to render the insured party uninsurable and without coverage for those conditions which exist at the time of termination; an insurer cannot assume a risk when an insured is apparently healthy and, thereafter, disavow the risk when the insured has developed an illness or other coverable condition.

2. INSURANCE — CANCELLATION OF INSURANCE — CONTINUING LIABILITY OF INSURER.

Where an insured develops a condition during the life of a health insurance policy and that policy is subsequently cancelled or terminated by the carrier, the carrier remains liable for those expenses which arise from that condition where those expenses would be covered by the policy had it not been terminated.

*Edick, Esper & Runco* (by *Robert E. Edick*), for Russell Morrell.

*Stempien & Stempien, P.C.* (by *Jeanne Stempien*), for United Fidelity Insurance Company.

Before: J. H. GILLIS, P.J., and BEASLEY and SAWYER, JJ.

PER CURIAM. Third-party defendant United Fidelity Insurance Company insured third-party plaintiff Russell Morrell and his wife under a group medical insurance policy issued to Morrell Builders, of which Russell Morrell was both owner and an employee. In May of 1982, United Fidelity notified Morrell Builders that the group policy coverage would terminate as of July 1, 1982. This termination was in accordance with the thirty-day notice requirement contained in the policy.

At the time of the termination, Morrell's wife, Norah, was pregnant. In September of 1982, she delivered her baby at Providence Hospital. The cost of delivery and related expenses totalled over $2,000. United Fidelity declined coverage based upon the termination and Russell Morrell failed to pay the bill. As a result, the hospital sued Morrell, who thereafter instituted the instant third-party action against United Fidelity.

The district court entered judgment in favor of Morrell in the amount of $2,329.05 plus interest. United Fidelity appealed and the Wayne Circuit Court, Helene N. White, J., affirmed without opinion. United Fidelity now appeals by leave granted and we affirm.

The insurance policy at issue in this appeal clearly provides that a "covered expense" is incurred on the date that the service is provided. The policy further provides that either party may terminate the policy on any premium due date provided there is thirty days written notice. It is undisputed that United Fidelity properly complied with the termination provision of the policy. Thus, by the provisions of the policy, Norah Morrell's medical expenses related to the pregnancy which were incurred after July 1, 1982, are not covered by the explicit terms of the terminated policy. Therefore, the question before us is whether public policy will permit enforcement of this insurance policy to relieve United Fidelity of liability for Norah Morrell's pregnancy-related medical expenses. We conclude that public policy will not permit this result.

Although both parties cite cases from foreign jurisdictions in support of their positions, there is little Michigan case law available for our analysis. *Auto-Owners Ins Co v Blue Cross & Blue Shield of Michigan,* 132 Mich App 800; 349 NW2d 238

(1984), considered a similar issue in the context of the respective liabilities of two different insurance carriers. In *Auto-Owners,* a woman was seriously injured in an automobile accident and was unable to return to work. Auto-Owners provided her no-fault automobile insurance coverage and Blue Cross covered her medical expenses through a group health policy through the injured's employer. Blue Cross commenced paying the medical expenses and continued until the injured woman was dropped from the employer's health plan when she was unable to return to work. Although there was a conversion provision in the Blue Cross policy, the injured woman did not exercise that option. Thereafter, Auto-Owners began the payment of medical expenses under the no-fault policy and commenced an action against Blue Cross to recover those benefits. This Court concluded that Blue Cross properly terminated coverage and that, by the terms of the Blue Cross policy, Blue Cross was not liable for expenses incurred after termination, even though those expenses arose from an injury received prior to termination. Although the *Auto-Owners* case supports defendant's position in the case at bar, we note that the *Auto-Owners* Court explicitly noted in several places that that case involved a suit between two insurance carriers and not between an insured and insurer. Indeed, the Court specifically stated that "we doubt that Auto-Owners is entitled to the presumptions which could be applied to the subscribing member." *Id.* at 818.

Also of some relevance to the case at bar is *Murphy v Seed-Roberts Agency, Inc,* 79 Mich App 1; 261 NW2d 198 (1977). In *Murphy,* the plaintiffs were physicians covered under a master medical malpractice policy issued by the California Union Insurance Company through the defendant. After

the policy became effective, the insurance company notified plaintiffs that it was cancelling the policy pursuant to a cancellation clause contained in the policy. The cancellation notice offered to renew the policy for one year at a much higher premium. The trial court granted summary judgment in favor of the defendant, which this Court reversed concluding that there existed genuine issues of material fact which needed to be resolved before the court could conclude whether the cancellation was enforceable. Specifically, the Court noted that "public policy considerations may void an attempted cancellation of an insurance policy, even under an unrestricted contractual right to cancellation." *Id.* at 14.

While the *Murphy* case supports the Morrells' position that public policy should prevent termination, we note that the insurer's conduct in *Murphy* was more egregious than in the case at bar. In *Murphy,* the insurance policy which was issued was for a three-year term with a single premium paid in advance. The insurer attempted to cancel the policy in mid-term in order to obtain a higher premium. In the case at bar, the policy was terminated as of a premium due date and there is no indication that United Fidelity terminated the group policy for the purpose of avoiding Norah Morrell's claim or that United Fidelity otherwise terminated in bad faith.

Finally, we also look to the case of *Zurich Ins Co v Rombough,* 384 Mich 228, 232-233; 180 NW2d 775 (1970), wherein our Supreme Court, quoting the California Supreme Court, noted that insurance policies are interpreted in light of what the insured would reasonably expect that the policy would mean.

Although the termination provisions of the policy at issue, as well as the provision that only

those expenses incurred during the life of the policy are covered, have a clear meaning and definition in the policy, we do not believe that the public policy of this state will permit the enforcement of such a termination or cancellation clause where the effect is to render a now uninsurable person without insurance coverage for those conditions which exist at the time of termination. In the case at bar, Norah Morrell was pregnant at the time of the termination of the United Fidelity policy. An insurance company cannot assume a risk when a person is apparently healthy and, thereafter, disavow the risk when the person has developed an illness or other coverable condition.

Therefore, we hold that where, as here, an insured develops a condition during the life of a health insurance policy and that policy is subsequently cancelled or terminated by the carrier, the carrier remains liable for those expenses which arise from that condition where those expenses would be covered by the policy had it not been terminated. We specifically note, however, that we do not hold today that the carrier, if it cancels, remains liable for expenses which may thereafter arise from conditions which did not exist at the time of termination.[1] Moreover, we today conclude only that a liability exists between an insurance company and its insured which continues to exist in a limited manner following cancellation or termination of a policy; we are not considering a claim, as in *Auto-Owners, supra,* where the question is the respective liability of two separate

---

[1] Of course, public policy may dictate that coverage must be provided after cancellation for all expenses where a condition which arose while the policy was in effect has rendered an insured totally uninsurable. However, that question will have to be addressed by another panel in an appropriate case since there is nothing in the case at bar which suggests that Norah Morrell could not have obtained health coverage for items other than her pregnancy.

insurance carriers. That is, were we considering a case in which a second insurance company provided coverage to Norah Morrell following the termination of the United Fidelity policy and chose to cover Norah Morrell's pregnancy expenses, we would not necessarily conclude that that second insurance company could thereafter recover against United Fidelity.

Finally, we wish to briefly address United Fidelity's argument that the trial court's ruling constitutes discrimination based upon pregnancy in violation of 42 USC 2000e and the Civil Rights Act, MCL 37.2201 *et seq.;* MSA 3.548(201) *et seq.* First, we note that this issue was not raised in the trial court. Second, United Fidelity's claim is meritless since the statutes it relies upon concern discrimination by an employer and this is not an employment discrimination case. Finally, while the trial court may have limited its ruling to those cases where the condition existing at the time of termination was pregnancy, our holding today is not necessarily that limited. That is, we rule against United Fidelity today, not specifically because Norah Morrell was pregnant, but because she had a covered medical condition at the time of termination. That covered medical condition happened to be a pregnancy.

Affirmed. Costs to appellee.